IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SARA LEE CORPORATION, | ) | |
| | ) | CASE NO.: 09 CV 3039 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | MORTON DENLOW |
| KRAFT FOODS INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SARA LEE'S MOTION TO COMPEL DEPOSITION TESTIMONY OF KRAFT'S EXPERT WITNESS AND DISCLOSURE OF DOCUMENTS CONSIDERED BY HIM**

Pursuant to Fed. R. Civ. P. 37(a)(1), Plaintiff Sara Lee Corporation moves the court for an order compelling disclosure and discovery relating to secret relationships and communications in this litigation between Defendants Kraft Foods Inc., Kraft Foods Global, Inc., (collectively "Kraft") and Kraft's proffered consumer survey expert, Yoram (Jerry) Wind, Ph.D. Pursuant to Rule 37(a)(5), Sara Lee seeks payment by Kraft of Sara Lee's reasonable costs incurred in making this motion. More specifically, Sara Lee requests that:

1. Kraft and Dr. Wind be ordered to fully disclose all previously undisclosed documents and other tangible things, including electronically stored information ("ESI"), related to the secret relationships. We ask that these be disclosed directly to Sara Lee on a "Confidential Outside Attorneys' Eyes Only" basis or, in the lesser alternative, to the Court for an *in camera* inspection prior to ordering that they be produced to Sara Lee if the Court decides so to do.

2. Dr. Wind be ordered to answer deposition questions designed to elicit full disclosure of his role in the secret relationships and related communications and to identify previously

undisclosed facts, data, and related tangible materials necessarily considered by him in forming the opinions in his three submitted reports.

## FACTS

Dr. Wind initially denied having a relationship with Kraft other than that related to the subject of his submitted expert reports.[1] It later was admitted that he had been party to undisclosed consultations with Kraft attorneys involving matters at issue in this litigation; that these occurred prior to, but in the same year of, writing those expert reports, and that this arrangement included his previously undisclosed consideration and discussion of hot dog advertising that is at issue in this litigation.[2] Kraft counsel took the position that Dr. Wind's undisclosed "consultancies" about ads other than the one he reported on were not discoverable and instructed Dr. Wind not to answer any questions about them; that Kraft attorney also refused a request on the record that he reconsider his instruction.[3] The deposition was continued on other matters, but suspended without adjournment for consideration of a motion to compel.[4]

The grounds stated for instructing Dr. Wind not to answer such questions were that Kraft considered him as having a dual Kraft capacity in this litigation: a testifying witness in support

---

[1] *See* Deposition of Yoram (Jerry) Wind, Ph.D., Jan. 24, 2011 ("Wind Depo."), extracts of which are found in Ex. 1 attached hereto, at 27 (Dr. Wind answered "No" to the following two questions: "Other than being paid a thousand dollars an hour for your efforts on this survey and [Sara Lee expert] Dr. Simonson's report and criticizing [Sara Lee expert] Dr. Ford's report, do you have any other compensation arrangements with Kraft?" "In the past, have you had any relationship with Kraft?").

[2] *Id.* at 114-121.

[3] *Id.* at 115 ("So I will instruct Dr. Wind, if he's requested to provide testimony with respect to any ads that he reviewed other than the subject of his expert reports in this matter, that he does not answer."); *Id.* at 120 (such consultancies not discoverable); *Id.* at 121 (request for reconsideration made and denied).

[4] *Id.* at 238.

of certain Kraft allegations and a secret Kraft consultant only for trial preparation on other undisclosed points.[5] On that basis, Kraft's attorney asserted that Dr. Wind's secret "consultancies are subject to not only Work-Product Doctrine written under Rule 26, but it's also our position that under Rule 26 they would be subject to the attorney-client communication privilege as well."[6] When asked whether Dr. Wind was his client, the Kraft attorney replied only "He's our expert."[7] Kraft's privilege logs required by Rule 26(a)(5) do not reflect a protected relationship with any consultant or any protected documents considered by any consultant.

Before expert depositions, the parties negotiated an agreement intended to avoid disputes about expert disclosures such as this. Doing so was especially important in this case because Rule 26's disclosure provisions changed during this case's course. The parties expressly "agreed to exchange or identify *all* documents provided to experts by counsel," and to apply "amended Rule 26 relating to attorney communications with experts."[8]

During that process, Kraft expressed its view that all "documents provided to experts by counsel are 'considered' within the meaning of Rule 26 and should be disclosed."[9] Kraft also viewed "any substantive e-mails regarding facts, opinions or the bases for opinions as discoverable under Rule 26(b)(4)(C)."[10] Sara Lee agreed, carving out only documents that

---

[5] *Id.* at 119-121.

[6] *Id.* at 120-121 (capitals in original).

[7] Wind Depo. at 115, Ex. 1.

[8] 12/15/2010 E-mail from O'Neil to Leighton, Ex. 2.

[9] 11/13/10 E-mail from Keyes to Leighton, Ex. 3.

[10] 12/15/2010 E-mail from O'Neil to Leighton, Ex. 2.

"never ha[ve] been read by the expert witness,"[11] and "non-substantive communications" such as messages about the dates and locations of depositions.[12]

Sara Lee has abided by that agreement under which Kraft sought and received very broad expert disclosures, going beyond the Rule 26's requirement to disclose documents "considered in forming opinions to be expressed" and "assumptions" provided by attorneys to the witness that were "relied on in forming" such opinions. Instead, the parties stipulated that they would disclose all documents *provided* to their experts, no matter whether or how they were used. Kraft has not abided by its agreement. During the agreement's negotiations, Kraft knew that it had provided additional documents to Dr. Wind that he had "considered," but it did not disclose this fact. Under the agreement as negotiated, Kraft must make the further disclosures requested, as explained below. But it bears emphasis at this point that Sara Lee never would have agreed to allow Kraft to invoke Dr. Wind's dual status as "consultant" to block disclosure of his consideration of documents and testimony regarding any of the contested advertising. This is especially so due to the subsequently discovered fact that Dr. Wind was given and considered at least one ad that, as shown below, not only was contested, but it admittedly was closely related to the advertising on which he opined in his reports and deposition.

Sara Lee repeatedly sought to resolve this dispute informally as required by Local Rule, but was unsuccessful.[13] Both parties agreed at their February 22, 2011, telephonic meeting that this was a stalemated dispute. In fact, that last conference yielded additional confusion and

---

[11] 11/16/2010 E-mail from Leighton to Keyes, Ex. 4.

[12] 12/15/2010 E-mail from R. Leighton to S. O'Neil, Ex. 2.

[13] 1/31/2011 E-mail from Leighton to Keyes and related exchanges; 2/14-15/2011 Letter exchanges between Keyes and Leighton; 2/17-18/2011 E-mail exchanges between Leighton, Keyes, and Martinez, Ex. 5

4

concern. At his deposition, Dr. Wind first described the consultancy work he performed as "not related to any ads" and said that it was limited to providing Kraft counsel with general advice on "research."[14] Shortly thereafter, he stated that he was "not sure" if the consultations involved advertising.[15] Kraft counsel there described the secret work as consultations on advertisement<u>s</u> – plural – that were at issue in this case.[16]

However, in the conference on February 22nd, a different Kraft attorney, Stephen J. O'Neil, described Dr. Wind's secret consultancy work. He said that it involved only one advertisement at issue in this case. He identified that ad to Sara Lee for the first time then as the "In The Same League" ad, a copy of which is attached hereto as Exhibit 6. We understood Kraft's counsel to state then that the "In The Same League" ad was the only advertisement provided to Dr. Wind in secret. But Mr. O'Neil said that there may have been additional documents and communications exchanged between Dr. Wind and Kraft, which he refused to disclose.

A subsequent disclosure by Kraft that it "independently retained ... for purposes of trial preparation" the same market research firm that Dr. Wind used to conduct the consumer survey that was the subject of the Wind Report further compounds this confusion and concern. 2/25/2011 Letter from Keyes to Sharawy, Ex. 7.

## ARGUMENT

Thus, due to the nature of this dispute and these inconsistent statements, Sara Lee does not know the full extent of the withheld materials, and seeks a broad order from the Court that

---

[14] Wind Depo. at 114, Ex. 1.

[15] *Id.* at 116-117.

[16] *Id.* at 114-115, 120.

would capture any relevant communications and materials that were withheld by Kraft, Dr. Wind, and/or anyone working with Dr. Wind or Kraft on consumer perception issues.

Kraft took a significant risk, frequently warned against, involving "the problems that arise when an expert wears 'two hats,' serving as both a litigation consultant and a testifying witness." *Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y. 2008). In such cases, courts often are "forced to grapple with what must be disclosed 'when an expert alternately dons and doffs the 'privileged hat' of a litigation consultant and the 'non-privileged hat' of the testifying witness.'" *Id.* (citation omitted).

The tension arises in light of several provisions of Rule 26 and their respective purposes. To facilitate arriving at the truth through effective cross-examination, Rule 26(a)(2) requires disclosure of all "facts or data considered by" any *testifying* expert witness "in forming" his opinions. According to the Advisory Committee Note, the "facts or data" terminology is to be "broadly" interpreted "to require disclosure of *any* material considered by the expert, from whatever source, that contains factual ingredients." (Emphasis added.) Such "facts or data" need only have been "considered" by the expert, not necessarily "relied" upon. *Id.*

Rule 26(b)(4)(D), in contrast, generally forbids discovery of "facts known or opinions held by" a *consulting* expert, one "retained … in anticipation of litigation or to prepare for trial and who is *not expected to be called as a witness at trial*." (Emphasis added.) Rule 26(b)(3) generally protects against disclosure of work product. As this Court has explained, "[a]lthough Rule 26(b)(3) protects the work product of consultants as well as attorneys, it must be read in light of Rule 26(b)(4) when the consultant asserting the privilege has been designated to testify

6

as an expert witness." *Silite v. Creative Bath Products*, No. 91 C 5920, 1993 WL 384562, at *2 (N.D.Ill. Sept. 28, 1993).[17]

Cases examining the dual-purpose expert sometimes have expressed difficulty in resolving the tension between Rule 26's provisions. However, no such difficulties are present here. The subject materials are discoverable because (1) the character of the subject materials render them discoverable – a factor on which the test for disclosure turns; (2) there is no clear line between Dr. Wind's role as secret consulting and public testifying expert; (3) even if such a line were clear, the materials that he considered likely related to and influenced Dr. Wind's work as a testifying expert; (4) even if deemed work product, Sara Lee's substantial need for the subject materials satisfies the exception to the doctrine; (5) any protections have been waived, and (6) the asserted attorney-client privilege does not shield the subject materials.

**The Character of the Subject Materials Compels Disclosure.**

Courts agree that a two-hat expert's proponent may assert a privilege "only over those materials generated or considered *uniquely* in the expert's role as consultant." *See, e.g., S.E.C. v. Reyes*, No. C 06-04435, 2007 WL 963422, at *1-2 (N.D.Cal. Mar.30, 2007) (citing cases; emphasis added). The test for such required uniqueness is strict. *See id* at *2. (scope of privilege "narrowly construed"). A narrow rule is required "in light of the purpose behind Rule 26(a)(2)(B)'s disclosure requirement – to allow parties to reveal weaknesses in expert testimony offered by an adversary." *In re Commercial Money Center, Inc., Equipment Lease Litigation*, 248 F.R.D. 532, 538 (N.D.Ohio 2008). Thus, "documents having no relation to the expert's role

---

[17] Rule 26(a)(2) was changed in December 2010. It previously required disclosure of "other information considered by the witness in forming" his opinions, which some courts took to mean attorney work product. The change was "meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." Advisory Committee Note.

7

as [a witness] need not be produced but ... *any* ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *BC.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) (emphasis added); *accord Grace A. Detwiler Trust v. Offenbecher*, 124 F.R.D. 545, 546 (S.D.N.Y. 1989); *Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.*, 563 F.Supp. 1013, 1014 (S.D.N.Y.1983).

The test for disclosure is an objective one. This is important, since Kraft has claimed that the subject materials relate to Dr. Wind's "consultation services" provided "in preparation for trial."[18] The cases make clear that the *label* (testifier vs. consultant) affixed to the expert by a party is not controlling. *See Reyes*, 2007 WL 963422, at *2 n.2 (the test is "*not what function* the expert was ostensibly serving when he reviewed or generated the particular documents in question") (emphasis added). "Rather, the test must be whether the documents reviewed or generated by the expert *could reasonably be viewed as germane to the subject matter* on which the expert has offered an opinion." *Id.* (emphasis added); *accord South Yuba River Citizens League v. National Marine Fisheries Service*, 257 F.R.D. 607, 614 (E.D. Cal. 2009); *Employees Committed for Justice v. Eastman Kodak Co.*, 251 F.R.D. 101, 104 (W.D.N.Y.2008). Kraft bears the burden of satisfying this test. *See U.S. v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (party asserting privilege bears the burden of establishing it). In light of the apparent nature of the undisclosed materials, and the subjects of Dr. Wind's reports, Kraft cannot satisfy the test.

We know that one of the previously undisclosed documents Dr. Wind considered was the "In The Same League" ad. In its Answer and Counterclaim, Kraft described that ad as allegedly containing false, deceptive, and unsubstantiated claims that were "*similar*" to those in the "Taste

---

[18] 2/14/2011 Letter from Keyes to Leighton, Ex. 5 at 1.

America's Best" promotions on which Dr. Wind has opined. Counterclaim ¶ 93. In fact, the undisclosed ad that was one of the subjects of the secret consultations contains virtually all the elements of the "Taste America's Best" free-standing insert that was the subject of Dr. Wind's proffered study: A "headline" about Ball Park hot dogs, a picture of a hot dog, Ball Park's logo, and the Kraft-challenged ChefsBest medallion and ChefsBest explanatory language.[19]

Thus, it is beyond cavil that the undisclosed communications and materials "could reasonably be viewed as germane to the subject matter on which the expert has offered an opinion." *Reyes*, 2007 WL 963422, at *2 n.2. Stated another way, consideration of the "In The Same League" ad necessarily "relates to the facts and opinions" Dr. Wind "expressed in his report" and should be disclosed. *Monsanto Co. v. Aventis Cropscience, N.V.*, 214 F.R.D. 545, 547 (E.D.Mo. 2002). Kraft has not attempted to satisfy its burden of establishing otherwise. In such cases disclosure is required. *See, e.g., id.*[20]

### The Lack of a Clear Line Between Dr. Wind's Roles Compels Disclosure.

Even as to the defenses Kraft has raised – which center on which of two "hats" Dr. Wind was wearing at particular times – Kraft has failed to satisfy its burden. Kraft must demonstrate (1) "a clear delineation between" Dr. Wind's "shifting roles from consultant to testifying expert" and (2) "a clear distinction between information 'having no relation to'" Dr. Wind's "role as a testifying expert and that considered by him in developing his expert opinions." *See Oklahoma*

---

[19] *Compare* attached Ex. 6, *with* attached Ex. 8.

[20] This argument is unaffected by the recent amendments to Rule 26 under which parties must still disclose "any material considered by the expert, from whatever source, that contains factual ingredients." Advisory Committee Note to Amended Rule 26(a)(2). The cases cited *supra* make clear that such material must be disclosed regardless of whether the testifying expert is considered by his party to be a consultant for a certain purpose, where the undisclosed material containing factual ingredients is "germane" or "related" to the material on which the testifying expert opines.

*v. Tyson Foods, Inc.*, 2009 WL 1578937 (N.D. Okla. June 2, 2009) (citing cases); *see also Beverage Marketing*, 563 F.Supp. at 1014.

The burden is high for obvious reasons. Statements by parties, and even sworn statements by experts, do not suffice to meet it. *See B.C.F.*, 171 F.R.D. at 62 (requesting party "should not have to rely on [opposing party's] representation that these documents were not considered by the expert in forming his opinion"); *In re Commercial*, 248 F.R.D. at 540 ("An expert's sworn statement that certain materials were not considered in forming ... opinions or do not relate to the subject matter of his or her report is 'hardly convincing'") (citation omitted).

Kraft has made no attempt to clearly delineate between Dr. Wind's role as consultant, and his role as a testifying expert, other than to say that Dr. Wind received the "In The Same League" ad while acting as consultant. But, in light of the subject material and related testimony – which by its very nature overlaps the opinions Dr. Wind has offered in this case – such delineation is inconceivable. As such, disclosure is required. *See B.C.F.*, 171 F.R.D. at 62 ("[A]ny ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.").

### The Information Necessarily Related to and Influenced Dr. Wind's Work as a Testifying Expert.

As a matter of policy, the work product doctrine has little role to play in the case of the two-hat expert like Dr. Wind. The alleged work product here was created and/or communicated *before* Dr. Wind submitted his reports, and perhaps later.[21] As the *B.C.F.* court explained, "the policy" underlying the doctrine "is even weaker when those facts are presented to an expert who considered them *before giving his expert opinion.* The need to prevent interference by an

---

[21] Sara Lee is not seeking drafts of Dr. Wind's submitted reports.

adversary seems *considerably outweighed* at that point by the need of the adversary to know the basis of the expert's opinion." *B.C.F.*, 171 F.R.D. at 63. (Emphasis added.)

Regardless of the policy implications, the subject materials are discoverable. When the work of the consulting expert influences the work of the testifying expert, the facts and opinions giving rise to that influence are discoverable. *See, e.g., Heitman v. Concrete Pipe Machinery*, 98 F.R.D. 740, 742 (E.D.Mo. 1983) (where testifying expert considered report of consulting expert in making his own report, consulting report ordered produced). The *Heitman* court explained that it was "not troubled by the fact that the [consultant's] report is the report of a non-testifying expert and would otherwise have to meet the high standard of Rule 26(b)(4)(B) to be discoverable." *Id.* at 742. The consultant's work was taken "out of the coverage of Rule 26(b)(4)(B) when it [was] voluntarily transmitted" to the testifying expert, who used it "in reaching his own conclusions." *Id.* The party objecting to disclosure could have prevented it by keeping the work of the consultant and testifying expert separate. *Id.*

As in *Heitman*, this Court should not be "troubled" by compelling disclosure, where there is a clear overlap, and influence, between the work of Kraft's single consulting and testifying consumer perception expert. Kraft refused to disclose anything beyond the fact that it provided the "In The Same League" ad to Dr. Wind and that Dr. Wind opined on that ad. But it is difficult to conceive of a reason for Kraft's actions other than to obtain Dr. Wind's view on whether the previously undisclosed ad, if surveyed, could support the allegation of deception or would be more likely or less likely to prove such Kraft's allegations compared to other Sara Lee advertisements, including the one that is subject to the report served on Sara Lee.

Accordingly, the previously undisclosed ad, related discourse, and Dr. Wind's analysis of that ad necessarily informed the design of the study and opinions Dr. Wind provided relating to

11

the originally disclosed ad. Dr. Wind's view on one challenged ad necessarily must inform his view on the other, admittedly "similar" ad. The selection of the "stimulus" to be shown to respondents in a consumer survey is considered by all such experts to be a critical factor in the creation of any survey. Dr. Wind's selection of one stimulus to use in a test rather than another is a key element of his study and expert judgment on which Sara Lee has not been able to cross-examine him.

Because Dr. Wind's alleged consultancy work necessarily informed his work as testifying expert, the consultancy work should be disclosed. *See* Fed.R.Civ.P. 26(b)(4)(C) (ii), (iii) (facts, data, and assumptions communicated by attorneys to expert are discoverable); Fed.R.Civ.P. 26(a)(2)(B) (expert must disclose all bases and reasons for his opinions); *Eliasen v. Hamilton*, 111 F.R.D. 396, 400 n.5 (N.D.Ill. 1996) (documents considered but rejected by testifying expert in reaching opinions should be disclosed).

### Sara Lee Has a Substantial Need for the Subject Materials.

Rule 26(b)(3) protects disclosure of attorney work product *except* where such work product is "otherwise discoverable under Rule 26(b)(1)," and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." As the subject materials admittedly are and relate to one or more "advertisements that are subject to this suit," Rule 26(b)(1) easily is satisfied. Wind Dep. at 119, Ex. 1. Sara Lee also has substantial need for the materials to adequately cross-examine Dr. Wind on his opinions. Dr. Wind's secret consultations with Kraft pertain to one or more advertisements challenged in this case and, as such, the opinions he has offered. Sara Lee intends to try to show this court, through Dr. Wind's reports, deposition testimony, and related materials, that his opinions are not reliable and that he is not credible. Sara Lee has a need for and right to the subject materials to the extent they undercut Dr. Wind's opinions or

12

credibility. Satisfaction of this need is precluded by Kraft's intractable refusal to provide the information; there is no other place to go for it.

### Any Attorney-Client Privilege or Work Product Protection Has Been Waived.

There is no evidence of an attorney-client relationship here. Nonetheless, any attorney-client or work product privilege may be waived where a party discloses privileged materials. Fed.R.Evid. 502(b). A disclosure does not operate as a waiver if the disclosure is inadvertent, the privilege holder took reasonable steps to prevent disclosure, and the holder promptly took reasonable steps to rectify the error, including following Rule 26(b)(5)(B). Fed.R.Evid. 502(b).

In applying Fed.R.Evid. 502(b), the court may consider any or all of five factors set forth in *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387-88 (7th Cir. 2008). These factors are: (1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Judson*, 529 F.3d at 388. The burden of proving these elements is on the party asserting privilege. *See Heriot v. Byrne*, 257 F.R.D. 645, 658 (N.D.Ill. 2009). Both Dr. Wind and Kraft voluntarily disclosed to Sara Lee that Dr. Wind has engaged in secret consultations regarding challenged advertising in this case.[22] These disclosures were not inadvertent and Kraft has taken no steps to recover or strike its "privileged" information. The disclosure was such that it opened the door to further inquiry into whether the privileged material influenced (or may have influenced) Dr. Wind's opinions or testimony.

As to the issue of fairness, it was unfair for Kraft to take advantage of the parties' agreement to gain for itself the broadest possible disclosures from Sara Lee's experts (including numerous questions regarding conversations with attorneys at the depositions of Sara Lee's

---

[22] *See* Wind Depo. at 114, 119-20 , Ex. 1; 2/14/2011 Letter from Keyes to Leighton, Ex 5.

experts), while failing to fully disclose its own secret communications. Under the circumstances, Kraft has waived any unlikely protections the subject materials may have once had.

### No Privilege Protects The Subject Materials.

Rule 26(b)(4)(C) protects communications between attorneys and experts *except* when they, in relevant part, "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Based on that rule alone, the subject materials are discoverable because Sara Lee seeks only facts or data, and any related discussions, analyses, or conclusions of Dr. Wind. More critically, the parties' agreement went *beyond* Rule 26(b)(4)(C) and required production of *all* documents provided to experts by counsel, including "any substantive e-mails regarding facts, opinions or the bases for opinions as discoverable under the Rule 26(b)(4)(C)."[23] Thus, even were the subject materials *otherwise* protected by Rule 26(b)(4)(C), under the agreement the provision of any such materials Kraft has waived any such protection.

### Kraft Should Be Ordered to Pay Costs Associated With This Motion.

Pursuant to Rule 37(a)(5), if a motion to compel is granted, "the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion … to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified …." *Silite*, 1993 WL 384562, *5 (quoting rule). It is clear that Kraft strategically erred in retaining Dr. Wind to wear dual hats and improperly tried to place the costs of its error onto Sara Lee. There is no recognizable basis for Kraft's apparent belief that Dr. Wind could analyze

---

[23] *See* 11/13/2010 E-mail from Keyes to Leighton, Ex. 3; 12/15/2010 E-mail, from O'Neil to Leighton, Ex. 2.

advertisements at issue in this case as a "consultant" and then opine about substantially similar challenged advertisements as a testifier without any crossover between roles – a virtual impossibility. Hence, there is no justification for denying Sara Lee access to Dr. Wind's "consultations," let alone "substantial" justification. *Silite*, 1993 WL 384562, *5 (awarding costs where opposing party was not substantially justified in resisting discovery). As such, Sara lee respectfully requests an award of reasonable costs associated with this motion, plus future costs (travel, attorneys' fees, etc.) associated with continuing the deposition of Dr. Wind on the subject materials.

## CONCLUSION

For the foregoing reasons, Sara Lee respectively urges that the requested order be issued.

Respectfully submitted,

Dated: February 28, 2011

By: /s/ Richard J. Leighton
Richard J. Leighton*
Douglas J. Behr*
Hesham M. Sharawy*
Scott M. Abeles*
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001
Tel: (202) 434-4100,
Fax: (202) 434-4646

Charles H. Cole**
Schuyler, Roche & Crisham, P.C.
130 East Randolph Street, Suite 3800
Chicago, IL 60601
Tel: (312) 565-2400
Fax: (312) 565-8300

Attorneys for Plaintiff and Counter-Defendant Sara Lee Corporation

*Admitted *pro hac vice*
** Designated local counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2011, I caused a copy of the foregoing Memorandum of Points and Authorities in Support of Sara Lee's Motion to Compel Deposition Testimony of Kraft's Expert Witness and Disclosure of Documents Considered by Him to be filed with the Clerk of Court using the Court's CM/ECF system, and served on all parties via the CM/ECF system, pursuant to LR 5.9, as to Filing Users and in accordance with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

Stephen J. O'Neil, Esquire
Michael E. Martinez, Esquire
Sangmee Lee, Esquire
Adam Louis Marchuk, Esquire
Jeffery T. Petersen, Esquire
K&L Gates LLP
Three First National Plaza
70 West Madison Street, Suite 3100
Chicago, IL 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

J. Michael Keyes, Esquire
K&L Gates LLP
618 West Riverside, Suite 300
Spokane, WA 99201-0602
Attorneys for Defendants
Kraft Foods Inc. and Kraft Foods Global, Inc.

/s/ Richard J. Leighton
Richard J. Leighton