# Exhibit 1

1

IN THE UNITED STATES DISTRICT COURT

NORTH DISTRICT OF ILLINOIS

EASTERN DIVISION

- - -

SARA LEE CORPORATION,              :

    Plaintiff,                    : Civil Action No.

        vs.                        : 09 CV 3039

KRAFT FOODS, INC., et al.,         :

    Defendants.                   :

- - -

Videotaped deposition of YORAM "JERRY" WIND, PH.D.

Volume 1

Philadelphia, Pennsylvania

Monday, January 24, 2011

8:57 a.m.

BEFORE:

Gail L. Inghram Verbano:

    Registered Diplomate Reporter,

    Certified Realtime Reporter,

    Certified Shorthand Reporter-CA (No. 8635)

Wind, Jerry - 01/24/2011

1  or has worked with you on this; correct?
2       A   Correct.
3       Q   Are they being compensated separately?
4       A   Correct.
5       Q   Do you know how much they have charged so
6  far?
7       A   I don't recall.
8       Q   Do you know how much you have charged so
9  far?
10      A   Somewhere between 90- and 100,000. This
11 includes not only the studies but also the evaluation
12 of the Dr. Ford reports and Dr. Simonson's critique of
13 mine.
14      Q   Okay. Other than being paid a thousand
15 dollars an hour for your efforts on this survey and
16 Dr. Simonson's report and criticizing Dr. Ford's report,
17 do you have any other compensation arrangements with
18 Kraft?
19      A   No.
20      Q   In the past, have you had any relationship
21 with Kraft?
22      A   No.

Wind, Jerry - 01/24/2011

114

1  Q  Did you have a discussion about any ads
2  other than the FSI that you used to test in Exhibit 1
3  here?
4  A  I had some other consultation with counsel
5  on other matters, not related to ads; related to the
6  study.
7  Q  What were those other matters?
8  A  Some other questions they had concerning
9  research, which I kind of advised them in general.
10 Q  Which you cannot what?
11 A  Which I advised them in general.
12 Q  What were they?
13 MR. KEYES: Hold on. I'm going to object
14 here.
15 Dr. Wind has testified that he's provided
16 consultation services to Kraft on ads that are
17 unrelated to this Angus ad. And we're going to
18 assert --
19 MR. LEIGHTON: No. If you're going to -- he
20 didn't quite say that. And his testimony is, he has not
21 done any work for Kraft other than this study; and now
22 he's saying that he did some other consultation.

Wind, Jerry - 01/24/2011

1    I'm trying to figure out what's going on
2    here. It's an inconsistency.
3         MR. KEYES: No. It's not inconsistent. I
4    think the testimony speaks for itself. He's here to
5    testify with respect to his work on the Angus study.
6    He's indicated that he's provided consultation services
7    to Kraft in other contexts, and he's not here to testify
8    on that. He won't be testifying on that.
9         So I will instruct Dr. Wind, if he's
10   requested to provide testimony with respect to any ads
11   that he reviewed other than the subject of his expert
12   reports in this matter, that he does not answer.
13        MR. LEIGHTON: Is he your client?
14        MR. KEYES: He's our expert.
15        MR. LEIGHTON: And would you mind putting on
16   record the basis for instructing him not to answer my
17   question.
18        MR. KEYES: Sure. Because under Rule 26, if
19   an expert witness provides consultation services in
20   anticipation of litigation, that is not discoverable.
21        MR. LEIGHTON: That's totally wrong.
22        MR. KEYES: Okay. Well, I guess we can --

Wind, Jerry - 01/24/2011

```
                                                              116
 1            MR. LEIGHTON:  With regard to instructing a
 2   witness, there were three areas you may instruct on.
 3            MR. KEYES:  Under Rule 26 -- and we can
 4   break out the rule if you like -- you're allowed to
 5   provide an objection if it calls for disclosure of
 6   attorney-client communications and/or attorney work
 7   product, both of which are implicated in the context of
 8   a consulting expert.
 9            MR. LEIGHTON:  I have to determine that.
10            MR. KEYES:  Well, you can ask about and I
11   will object and instruct --
12            MR. LEIGHTON:  You can object and let's see.
13   BY MR. LEIGHTON:
14        Q   Now, as I understand it -- let me say, did
15   this extra -- were there --
16            How many consultations were there with
17   Kraft?
18            MR. KEYES:  Objection.  I think it's vague
19   as to "how many consultations."
20   BY MR. LEIGHTON:
21        Q   You may answer.
22        A   Few telephone discussions.
```

Wind, Jerry - 01/24/2011

117

1      Q    A few telephone.

2          Did any of them involve Ball Park or

3 Sara Lee?

4      A    They may have. I basically don't have any

5 recollection of what we spoke specifically about.

6      Q    Generally, did they involve Ball Park?

7      A    They may have. I'm not absolutely sure.

8      Q    Did they involve hot dogs?

9      A    Yes.

10     Q    Did they involve Oscar Mayer hot dogs?

11     A    I'm not sure. I assumed that it related to

12 Oscar Mayer, but I really don't recall the discussions.

13     Q    Did they involve advertising?

14     A    I'm not sure. There was some general

15 research questions that we had some general discussion

16 on, which proceeded and was not related really to this

17 test form.

18          And incidentally, I understand where your

19 confusion was before, because when you asked me at the

20 beginning in terms of have I done any other work for

21 Kraft, I was thinking about historically and I have not.

22 This was basically -- and I did do some consultation

118

1  last year to Kraft on another matter, not related to
2  this test.
3      MR. LEIGHTON: Will you agree to go off the
4  record, have him tell me, and if I'm satisfied, I won't
5  pursue it -- and if I'm not satisfied, we can take it up
6  with the Court if we have to and then just move on
7  rather than me start picking -- what I'm trying to do is
8  I have a right, in effect, to a privilege log.
9      And I can see it's going to be very hard
10 for me to pin this down, since it involves hot dogs at
11 about the right time and things like that.
12     MR. KEYES: Okay. I guess I'm not clear.
13     MR. LEIGHTON: I will stipulate to you that
14 we go off the record; if you still have an objection, I
15 will not pursue it; and then I'll have to decide whether
16 we go forward or not in front of a judge.
17     MR. KEYES: That's fine.
18     MR. LEIGHTON: All right. Let's go off the
19 record for a moment.
20     THE VIDEOGRAPHER: Going off the record.
21 This the end of Tape No. 2 in the deposition of
22 Dr. Wind. The time on video is 11:36.

119

1    (Discussion off the record.)

2    THE VIDEOGRAPHER: We are now back on the

3    record. This is the beginning of Tape No. 3 in the

4    deposition of Dr. Wind. Time on video is 11:43.

5    And also present with no objection is an

6    additional videographer, Bill Verbano.

7    You may continue.

8    MR. LEIGHTON: We've had a discussion off

9    the record, and it's been represented to me that

10   Dr. Wind has done consultation with Kraft on

11   advertisements that are subject to this suit but that

12   consultation is independent from the study that is

13   Exhibit 1 in this case.

14   It's also been represented to me that that

15   consultation was and is, in the opinion of counsel for

16   Kraft, subject to the Attorney-Work-Product Doctrine

17   protections; and that if I asked Dr. Wind to explain

18   for the record what those other consultations were,

19   counsel for Kraft will instruct the witness not to

20   answer, based upon whatever he gives as his basis.

21   So I'm going to ask, in a minute, Dr. Wind

22   that question. I anticipate an instruction.

120

1       I will not pursue the matter further here,
2  other than to say, after -- other than to say that I
3  may say -- ask attorneys for Kraft to reconsider the
4  instruction.
5       And then we're going to proceed in other
6  areas, and I'll try to stay away from this area.
7       So, Dr. Wind, what are the other
8  consultations and work projects that you did for Kraft?
9       MR. KEYES:  Doctor -- and let me lodge my
10 objection here:
11      As indicated, counsel, we discussed off the
12 record that Kraft takes the position that Dr. Wind's
13 consultancies related to other advertisements are not
14 subject to discovery under Rule 26.
15      Just to elaborate further, the ads that
16 Dr. Wind reviewed in his role as a consultant were not
17 ads related to the Angus study contained in Exhibit 1
18 to his deposition and were not ads that were related to
19 any of the surveys that were conducted by Sara Lee's
20 expert, Dr. Ford, in this matter.
21      Therefore, these consultancies are subject
22 to not only Work-Product Doctrine written under

Wind, Jerry - 01/24/2011

121

1  Rule 26, but it's also our position that under Rule 26
2  they would be subject to the attorney-client
3  communication privilege as well.
4        And on that basis, I will instruct Dr. Wind
5  not to answer that question.
6        MR. LEIGHTON: And I'm going to object to
7  that instruction and request that you reconsider it, and
8  you can give me your answer at any time you want until
9  the end of this deposition.
10       And then we're just going to move on.
11       MR. KEYES: You can have it now. We've
12 considered your objection. It's noted. And, no, we
13 will not be reinstructing Dr. Wind to answer.
14       MR. LEIGHTON: All right. And I will
15 probably move to compel at the end of this deposition.
16 BY MR. LEIGHTON:
17   Q  Okay. Back to deposition Exhibit 1. If
18 you'll turn to Tab D, please.
19   A  D?
20   Q  D, as in David or delta.
21       Were these field instructions exactly as
22 sent out to the field, these field instructions in

238

1     Q    Anybody else?

2     A    I've not done a systematic survey to
3 identify other people who used it.

4     Q    Are you aware of any treatise or other
5 authority that says that is the way --

6     A    No.

7     Q    Let me ask the question and then give me an
8 answer.

9     Are you the aware of any other treatise or
10 authority that says what you did here is in accord with
11 generally accepted practices?

12     A    No, but I've been using this in all my
13 litigation studies for 40 years -- 35 years, whenever I
14 started.

15     Q    And have you won every single one?

16     A    Most. I had a few losses, but most.

17     MR. LEIGHTON: I have no questions. We will
18 not adjourn this question finally -- this deposition
19 finally until I decide whether or not to move to compel.
20 So for the moment we'll consider it a suspension until I
21 review the transcript and other things I have to look
22 at.

Wind, Jerry - 01/24/2011

```
                                                              241
 1              CERTIFICATE OF SHORTHAND REPORTER

 2

 3          I, Gail Inghram Verbano, Registered

 4    Diplomate Reporter, Certified Realtime Reporter,

 5    Certified Shorthand Reporter (CA) and Notary Public,

 6    the officer before whom the foregoing proceedings were

 7    taken, do hereby certify that the foregoing transcript

 8    is a true and correct record of the proceedings; that

 9    said proceedings were taken by me stenographically and

10    thereafter reduced to typewriting under my supervision;

11    and that I am neither counsel for, related to, nor

12    employed by any of the parties to this case and have no

13    interest, financial or otherwise, in its outcome.

14

15

16

17              _____

18              Gail Inghram Verbano, CSR, RDR, CRR

19              CA-CSR No. 8635

20

21

22
```