# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | | |
|---|---|---|
| SARA LEE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 3039 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| KRAFT FOODS INC., and | ) | |
| KRAFT FOODS GLOBAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court on opening day of baseball season in Chicago is Plaintiff's motion to compel deposition testimony and disclosure of documents from Defendants' consumer survey report. Plaintiff Sara Lee Corporation ("Plaintiff") alleges that Defendants Kraft Foods Inc. and Kraft Foods Global, Inc. (collectively "Defendants") failed to comply with the rules governing expert discovery. According to Plaintiff, Defendants improperly instructed their expert not to answer certain deposition questions and to withhold certain documents relating to this litigation. Defendants respond that Plaintiff seeks materials beyond the scope of expert discovery. For the reasons explained below, Plaintiff strikes out and the Court denies Plaintiff's motion to compel.

# I. BACKGROUND FACTS

In this lawsuit, two of the nation's largest hot dog manufacturers accuse each other of false and deceptive advertising. Plaintiff, maker of Ball Park Franks, sued Defendants, who own the Oscar Meyer brand, and Defendants filed counterclaims. Both sides have retained experts to testify about the allegedly misleading nature of each other's ads.

The motion to compel involves a defense expert retained to testify about one of Plaintiff's advertisements and to consult, but not testify, about another. Defendants retained Dr. Yoram ("Jerry") Wind, the Lauder Professor of Marketing at the University of Pennsylvania Wharton School of Business, to conduct a consumer perception survey and to offer expert testimony about Sara Lee's "Taste America's Best Beef Franks" advertisement. Ex. 8 to Pl. Mem.[1] (copy of ads). With the help of a market research firm, Dr. Wind conducted a survey about Plaintiff's "Taste America's Best Beef Franks" ads. Using the survey, Dr. Wind issued an expert report opining that Plaintiff's advertisement misled "a significant portion of the relevant consuming population" into believing that it was Ball Park *Angus* Beef Franks, rather than Ball Park Beef Franks, that were advertised as "America's Best Beef Franks." Ball Park Beef Franks won the ChefsBest award referenced in the ad. Rule 26 Expert Report 1–2, Ex. A to Def. Resp.[2]

---

[1] "Pl. Mem." refers to the Memorandum of Points and Authorities in Support of Sara Lee's Motion to Compel Deposition Testimony of Kraft's Expert Witness and Disclosure of Documents Considered by Him, Dkt. 87.

[2] "Def. Resp." refers to Kraft's Response in Opposition to Sara Lee's Motion to Compel Deposition Testimony of Kraft's Expert Witness and Disclosure of Documents Considered by Him, Dkt. 88.

The dispute arises over Dr. Wind's role as a non-testifying consultant regarding another of Plaintiff's ads. Dr. Wind consulted Defendants but will not testify concerning Plaintiff's "We'd Compare Our Dogs to Others But They Aren't Even in the Same League" advertisement. Ex. 6 to Pl. Mem. (copy of ad). Defendants did not produce to Plaintiff any materials or communications relating to this ad in their expert disclosures. Plaintiff first learned of the dual relationship at Dr. Wind's deposition, when Defendants instructed Dr. Wind not to answer questions about his work as a consultant, where he has prepared no expert report and will not testify.

Defendants submitted *in camera* to this Court their written and electronic communications with Dr. Wind regarding the "Not Even in the Same League" ad. They are few in number, and a review shows that Dr. Wind did nothing more than advise defense counsel how they might conduct pilot surveys of the "Not Even in the Same League" ad. He suggested possible methodology and also provided price quotes. These communications are consistent with Defendants' representation to the Court that Dr. Wind advised Defendants about a pilot study of the ad but that defense counsel independently conducted the survey and did not share the results with Dr. Wind.

Plaintiff now requests that the Court order Defendants to produce all previously undisclosed documents related to Dr. Wind's consultations, and order Dr. Wind to answer deposition questions about his services regarding the "Not Even in the Same League" ad. Defendants oppose the motion to compel.

A choice-of-law agreement between the parties also bears on the motion. In

preparation for expert discovery, the parties agreed to adopt the newly amended Federal Rule of Civil Procedure 26 relating to expert disclosures and discovery. The attorneys also exchanged a number of e-mails attempting to clarify what documents and communications fell within their agreement. Contrary to Plaintiff's assertion, however, the exchanges do not evince an agreement to provide attorney-expert communications beyond what is required by the amended Rule 26. In Plaintiff's counsel's own words, the parties agreed to limit the production of attorney-expert communications to "any substantive e-mails or other documents that we sent to our experts regarding facts, opinions, or the bases for opinions *that are discoverable under Rule 26(b)(4)(C)* [a provision added by the 2010 amendements]." E-mail dated Dec. 15, 2010, Ex. B to Def. Resp. (emphasis added). Accordingly, the Court will apply amended Rule 26.

## II. LEGAL STANDARDS

This motion implicates the two different standards that govern discovery related to testifying experts and non-testifying consultants. Federal Rule of Civil Procedure 26(a)(2) sets forth required expert disclosures. This rule was amended in 2010 to narrow the scope of expert discovery, and Rule 26(b)(4)(C) was added to provide work-product protections concerning many communications between a party's attorney and expert witness. Rule 26(b)(4)(D), meanwhile, establishes a high barrier to discovering opinions of a non-testifying consultant.

First, a review of the standards for discovery relating to testifying experts. In 1993, Rule 26(a)(2)(B) was amended to require a testifying expert to produce a written report

setting forth a complete statement of the expert's opinions, as well as "the data and other information considered by the witness in forming the opinions." Many courts interpreted the rule as establishing a "bright-line" approach that required disclosure of all attorney-expert communications, including "otherwise protected work product and attorney-client communications" if the expert "read or reviewed the privileged materials before or in connection with formulating his or her opinion." *In re Commercial Money Ctr., Inc., Equip. Leasing Litig.*, 248 F.R.D. 532, 537 (N.D. Ohio 2008) (citing *W. Resources, Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 181494, at *9 (D. Kan. Jan. 31, 2002)); *see also In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001) ("[F]undamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony," regardless of whether it is work product or not.) Such broad expert discovery carried with it several unfortunate consequences. It increased discovery costs and impeded effective communication between attorneys and their experts, sometimes even inducing parties to retain two separate sets of experts—one for consultation and another to testify. Fed. R. Civ. P. 26 advisory committee's note (2010 Amendments).

In December 2010, Rule 26 was amended to address the undesirable effects of routine discovery into attorney-expert communications. *Id.* First, Rule 26(a)(2)(B)(ii) was amended to require disclosure of "facts or data," rather than "data or other information," considered by an expert witness in forming the opinions to be offered. The advisory committee intended this change to "limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." *Id.* That said, the committee urged that the amendment be

interpreted broadly to cover "any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.*

In addition, Rule 26(b)(4)(C) was added to provide work-product protection against discovery into communications between expert witnesses and counsel. The new provision applies work-product protections to "communications between the party's attorney and [testifying expert], regardless of the form of the communications." Fed. R. Civ. P. 26(b)(4)(C). That said, the new provision withholds work-product protections from communications that

> (i) relate to compensation for the expert's study or testimony;
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

*Id.* Communications that receive work-product protection are not discoverable unless the party seeking discovery "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). .

As for non-testifying consultants, the Rules provide an even higher barrier to discovering attorney-expert communications. Ordinarily, a party may not "discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). The only exceptions are medical examinations under Rule 35(b) or a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.*

Occasionally, courts must determine which standard applies to an expert who wears "two hats" by serving as both a non-testifying consultant and a testifying expert. *In re Commercial Money Ctr.*, 248 F.R.D. at 538. Most courts have held that a single expert may serve in both roles but that the broader discovery for testifying experts applies to everything except "materials generated or considered *uniquely* in the expert's role as consultant." *Id.* (emphasis in original) (citing *SEC v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422, at *2 (N.D. Cal. March 30, 2007)). In light of Rule 26(a)(2)(B)'s broad disclosure requirements, courts have concluded "any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997); *see also In re Commercial Money Ctr.*, 248 F.R.D. at 538 ("If the line between consultant and witness is blurred, the dispute should be resolved in favor of the party seeking discovery.").

### III. DISCUSSION

As explained below, Dr. Wind serves as a testifying expert for the "Taste America's Best Beef Franks" ad and a non-testifying consultant for the "Not Even in the Same League" ad. For that reason, the communications that Plaintiff requests are subject to the protections for non-testifying consultants, which Plaintiff cannot overcome. Moreover, even assuming that the communications between Dr. Wind and defense counsel did relate to Dr. Wind's role as a testifying expert, they receive work-product protection.

**A.     The Requested Materials Are Protected As Communications With a Non-Testifying Consultant.**

The Court concludes that the requested materials relate solely to Dr. Wind's role as a consultant, even taking into account the preference for disclosure when dealing with an expert who wears two hats. Dr. Wind is a testifying expert for the "Taste America's Best Beef Franks" ad and a non-testifying consultant for the "Not Even in the Same League" ad. He has not expressed any opinion regarding the "Not Even in the Same League" ad and he will not offer any testimony with respect to it at trial.

The requested materials merely suggest a methodology for potential pilot surveys of the "Not Even in the Same League" ad. They do not reference the ad discussed in Dr. Wind's expert report. Plaintiff's counsel objects that the materials may shed light on the methodology employed in Dr. Wind's expert report, because both the consulting work and the expert report involved surveys about Plaintiff's hot dog advertisements. But the requested materials on their face relate only to the "Not Even in the Same League" ad, so the Court finds that they were generated "uniquely in the expert's role as consultant." *In re*

*Commercial Money Ctr.*, 248 F.R.D. at 538 (emphasis omitted).

Because the requested materials relate solely to Dr. Wind's role as a non-testifying consultant, Plaintiff may not discover them unless it can show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D). Although Plaintiff emphasizes its need to undermine Dr. Wind's methodology, it has already retained an expert to do just that. The Court thus finds that Plaintiff has obtained "facts or opinions on the same subject by other means," so the requested materials retain their protection under Rule 26(b)(4)(D).

**B.     Even Assuming that the Requested Materials Related to Dr. Wind's Role as a Testifying Expert, They Do Not Fall Within the Scope of Expert Discovery.**

The requested materials contain neither "facts or data" nor "assumptions that the party's attorney provided," so they are not discoverable even under the "testifying expert" rubric. After *in camera* review, the Court concludes that Dr. Wind merely advised Defendants on how they might conduct a pilot survey of the "Not Even in the Same League" advertisement. Such expert-attorney communications arguably may have been discoverable under the pre-amendment Rule 26, but no more. None of the communications contain facts, data, or assumptions that Dr. Wind could have considered in assembling his expert report, and thus Defendants had no duty to disclose the communications and Plaintiff no right to discover them. *See* Fed. Rule Civ. P. 26(a)(2)(B), 26(b)(4)(C).

Rather, the requested materials receive work-product protection under Rule 26(b)(4)(C), because they are communications between Dr. Wind and defense counsel. As such, the materials are protected from disclosure unless Plaintiff shows it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Concerning attorney-expert communications, parties will rarely be able to make this showing "given the broad disclosure and discovery otherwise allowed regarding the expert's testimony." Fed. R. Civ. P. 26 advisory committee's note (2010 Amendments); *see also Moore v. R.J. Reynolds Tobacco Co.*, 194 F.R.D. 659, 664 (S.D. Iowa 2000) (holding that counsel can effectively probe the reliability of an expert through normal cross-examination and testimony from other experts). Just so here.

Plaintiff has examined the data and methods underlying Dr. Wind's report, deposed Dr. Wind about the report, and retained its own expert to rebut the report. Given these considerable opportunities to test Dr. Wind's methodology, Plaintiff has not shown a "substantial need" for the materials here. Besides, even if the requested materials would show that Dr. Wind proposed a somewhat different methodology to test the other advertisement, they are of questionable relevance for impeachment. Because Dr. Wind never learned the results of any "Not Even in the Same League" pilot survey, he could not have adjusted his methodology based on those results.

Plaintiff also claims that Defendants waived work-product protection, but this argument lacks merit. Plaintiff argues that Defendants waived work-product protection by admitting that Dr. Wind consulted them on the "Not Even in the Same League" ad. Federal Rule of Evidence 502 governs waiver of work product protection, but because no disclosure occurred here, the Court need not perform a Rule 502 analysis. Merely admitting that communications occurred does not qualify as "disclosing" the underlying communications. By Plaintiff's logic, parties would commit a waiver every time they made an entry in a privilege log. The requested materials, therefore, retain their work-product protection.

## IV. CONCLUSION

**For the reasons set forth in this opinion, the Court denies Plaintiff's motion to compel deposition testimony and disclosure of documents. The Court nevertheless finds that Plaintiff was substantially justified in requesting *in camera* review of the disputed communications and therefore denies Defendants' request for fees and costs.**

**The season is long and a win or loss on opening day does not decide the pennant, or this case. We will have to wait to see whose hot dog tastes best. Batter up!!**
**SO ORDERED THIS 1st DAY OF APRIL, 2011.**

*[signature: Morton Denlow]*
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Richard J. Leighton
Douglas J Behr
Hesham M. Sharawy
Scott M. Abeles
Keller and Heckman LLP
1001 G Street, N.W., Suite 500 West
Washington, D.C. 20001


Charles H. Cole
Schuyler, Roche, & Crisham, P.C.
130 East Randolph Street, Suite 3800
Chicago, IL 60601

Counsel for Plaintiff

Stephen J. O'Neil
Michael E. Martinez
J. Michael Keyes
Jeffery T. Peterson
Sangmee Lee
K&L Gates LLP
Three First National Plaza
70 West Madison Street, Suite 3100
Chicago, Illinois 60602

Counsel for Defendants